# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**APRIL WILSON, and ERIN DOTSON,**
**individually and on behalf of all others**
**similarly situated,**

*Plaintiffs*,

**v.**

**THE GREENBRIER CLINIC, INC.,**

*Defendant.*

**Civil Action No.:**  5:26-cv-00355

## CLASS ACTION COMPLAINT

Plaintiffs, April Wilson, and Erin Dotson, ("Plaintiffs"), individually and on behalf of all others similarly situated, bring the following Class Action Complaint against Defendant, The Greenbrier Clinic, Inc., ("Defendant" or "Greenbrier"). Plaintiffs make the following allegations, except as to allegations specifically pertaining to Plaintiffs, upon information and belief.

## PARTIES, JURISDICTION & VENUE

1. Plaintiff April Wilson is a resident of White Sulphur Springs, Greenbrier County, West Virginia.

2. Plaintiff Erin Dotson is an adult resident of Ronceverte, Greenbrier County, West Virginia.

3. Defendant is a domestic corporation with the principal place of business located at 40823 Midland Trail E., White Sulphur Springs, West Virginia 24986.  Defendant may be served via its registered agent, PRAS, LLC, at 560 Main Street W., White Sulphur Springs, West Virginia 24986.

4.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of costs and interest.[1]

5.      This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given that the Defendant has a principal place of business in this District.

6.      Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

7.      Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs.

8.      At all times material hereto, Defendant was engaged in the provision of healthcare services, including diagnostic technologies such as bone density scanning, radiography, computerized tomography, and mammography.

9.      On or about October 16, 2024, Plaintiff Wilson had one or more mammograms performed at Defendant's facility.

10.     On or about March 3, 2025, Plaintiff Erin Dotson had one or more mammograms performed at Defendant's facility.

---

[1] According to Defendant's webpage, "[t]housands of people worldwide come to The Greenbrier Clinic for state-of-the-art healthcare every year." *See*, https://greenbrierclinic.com/clinic. In light of this, there are reasonable grounds to believe that at least one member of the class is of diverse citizenship from the Defendant.

11.     At all times relevant hereto, Defendant represented to Plaintiffs and Class Members (later defined) that its clinic offered the latest technology to aid in detecting health issues and that by leveraging these state-of-the-art diagnostic tools, physicians can accurately identify patient concerns and health issues.

12.     With respect to its mammography services, Defendant represented that its 3D mammography service was "one of the latest technological innovations in women's healthcare" and that its 3D technology "improves accuracy and can help detect breast cancer earlier and therefore allow treatment sooner."[2]

13.     Payment was made on Plaintiffs' behalf for mammography services and facilities that followed applicable clinical image quality standards and were as represented by Defendant.

14.     Unfortunately, Plaintiffs did not receive the quality of mammogram for which they paid.  Plaintiffs and Class Members received mammograms that were inaccurate, inferior, and not in compliance with applicable image quality standards.

15.     By letter dated March 23, 2026, Defendant notified Plaintiff Wilson that there was "serious concern" regarding the quality of the mammogram performed at its facility in October 2024 and that Plaintiff would need to have the mammogram reviewed to determine whether a repeat mammogram is needed.  Plaintiff is scheduled for an appointment in June 2026 to determine whether a repeat mammogram is necessary.

16.     In or around 2020, Plaintiff Erin Dotson was diagnosed with breast cancer.  Plaintiff Dotson has had several surgical procedures since her cancer diagnosis with the last procedure occurring in 2022 or 2023.  Around 2025, Plaintiff Dotson began experiencing pain and was scheduled for a mammogram with Defendant on March 3, 2025.

---

[2] Diagnostic Services, https://greenbrierclinic.com/clinic/diagnostic-services/

17.    By letter dated March 23, 2026, Defendant notified Plaintiff Dotson that there was "serious concern" regarding the quality of the mammogram performed at its facility in March 2025 and that Plaintiff would need to have the mammogram reviewed to determine whether a repeat mammogram is needed. Plaintiff Dotson is working with her healthcare providers to schedule follow-up procedures.

18.    Defendant represented that its 3D mammography technology was accurate, could help detect breast cancer earlier, and therefore allow treatment sooner.  However, now, a year and a half later, Defendant informs Plaintiffs that its mammography was not accurate and could not be relied upon for the early detection of breast cancer.

19.    Plaintiffs have incurred, and will continue to incur, expenses as a result of the worthless mammograms that Defendant provided.

20.    Plaintiffs, and other similarly situated individuals, were deprived of their benefit of the bargain, and have been subjected to unnecessary emotional distress regarding the true results of their mammograms.  Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class.

## CLASS ACTION ALLEGATIONS

21.    Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs.

22.    Plaintiffs bring this action on behalf of themselves, and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed class ("Class" or "Class Members") is defined as:

> **Nationwide Class**: All individuals within the United States who received one or more mammograms from the Defendant between October 28, 2023, and February 26, 2026, and were notified that their mammogram needed to be reviewed to determine whether a repeat mammogram was needed.

4

23.     Excluded from the Class(es) are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and associated court staff assigned to this case.

24.     Plaintiffs reserve the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

25.     Numerosity: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. While the exact number of Class Members is unknown to Plaintiffs currently, such number is exclusively in the possession of Defendant.

26.     Common Questions: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, include, but are not limited to, the following:

      a.  Whether Defendant's actions and omissions constituted negligence;

      b.  Whether the mammography results Defendant provided were incorrect;

      c.  Whether Defendant's actions were false or misleading;

      d.  Whether Plaintiffs and the Class are entitled to compensation;

      e.  The appropriate measure of damages or statutory relief.

27.     Typicality: Plaintiffs' claims are typical of those of the other members of the Class because Plaintiffs, like every other Class Member, were exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Class.

28.     Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Class Members.  Plaintiffs seek no relief that is antagonistic or adverse to the Class Members, and the infringement of their rights and the damages they suffered are typical of other Class Members.  Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

29.     Superiority and Manageability: Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against Defendant.  Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

30.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a

6

common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

31.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.  Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

32.     Policies Generally Applicable to the Class:  This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members. Defendant's practices challenged herein apply to and affect Class Members uniformly, and Plaintiffs' challenges to these practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

## CAUSES OF ACTION

### COUNT I: NEGLIGENCE
**(On behalf of Plaintiffs and Class Members)**

33.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs.

34.     Plaintiffs and Class Members are patients of Defendant who received mammograms between October 28, 2023, and February 26, 2026.

35.     At the time Plaintiffs and Class Members received their mammograms, Defendant was under a duty to ensure its facilities met the clinical image quality standards established by its accreditation body, the American College of Radiology.

36.     Defendant breached its duty to Plaintiffs and Class Members and has been prohibited from performing mammography by the Food and Drug Administration (FDA) because Defendant failed to meet the applicable mammography quality standards.

37.     On or about March 23, 2026, Plaintiffs and Class Members were notified by Defendant that their respective mammograms needed to be reviewed by another MQSA-certified mammography facility because the FDA determined that Defendant failed to meet certain quality standards.

38.     Plaintiff and Class Members have sustained emotional distress as a result of Defendant's failure to provide accurate and reliable mammography services.  Plaintiff and Class Members are required to undergo additional testing to confirm they are not at risk for breast cancer and/or other medical issues.

39.     As patients of Defendant's facility, Plaintiffs and Class Members are foreseeable plaintiffs, and the emotional distress associated with finding out their mammograms were unreliable and inaccurate was also foreseeable to Defendant.

40.     As a direct and proximate result of Defendant's acts and omissions, Plaintiffs and the Class have suffered and will continue to suffer damages in an amount to be proven at trial.

### COUNT II: BREACH OF CONTRACT
### (On behalf of Plaintiffs and Class Members)

41.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs.

8

42.    Plaintiffs and Class Members entered into contracts with Defendant for the provision of state-of-the-art, reliable, and accurate mammograms.  Plaintiffs and Class Members paid for their respective mammograms and fulfilled their obligations under those contracts with Defendant.

43.    Every contract imposes upon the contracting parties a duty of good faith and fair dealing.  Given that every contract carries an implied covenant of good faith and fair dealing, Defendant was under a duty to ensure its mammography technology and facilities met the clinical image quality standards established by its accreditation body, the American College of Radiology.

44.    Defendant breached the terms of the agreement and its duty of good faith and fair dealing by, as determined by the FDA, failing to meet applicable clinical image quality standards for mammography. More specifically, the mammograms Defendant provided contained deficiencies that presented serious concerns about the quality and accuracy of the mammography.

45.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff and the Class have suffered and will continue to suffer damages in an amount to be proven at trial.

### COUNT III: UNJUST ENRICHMENT
### (On behalf of Plaintiffs and Class Members)

46.    Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs.

47.    Plaintiffs bring this Count in the alternative to the breach-of-contract count above.

48.    By paying for mammography services, Plaintiffs and Class Members conferred a monetary benefit on Defendant.  Defendant knew that Plaintiffs and Class Members conferred a benefit upon it and has accepted and retained that benefit.

49.    By advertising its diagnostic services, such as mammography, as being state-of-the-art technology designed to quickly and accurately identify medical issues and other patient

concerns, Defendant was obligated to ensure that its technology and facilities met all applicable clinical image quality standards.

50. Defendant failed to maintain clinical image quality standards when it provided Plaintiff and Class Members' mammograms and, therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiff and Class Members conferred upon Defendant without paying value in return.

51. Defendant was unjustly enriched by saving the costs it reasonably should have expended on maintaining its mammogram technology and facilities. Furthermore, by charging Plaintiff and Class Members for mammograms that were deficient, inferior and of lesser value, Defendant was unjustly enriched.

52. If Plaintiffs and Class Members had known that Defendant would not maintain its mammogram technology and facilities, they would not have allowed Defendant to perform such vital diagnostic services. Plaintiffs and Class Members now lack an adequate remedy at law.

53. As a direct and proximate result of Defendant's acts and omissions, Plaintiffs and the Class have suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT IV: VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT & PROTECTION ACT {W. Va. Code §§46A-6-101 et seq.}**
**(On behalf of Plaintiffs and Class Members)**

54. Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs.

55. Plaintiffs and Class Members are consumers of Defendant's mammography services.

10

56. At all times material hereto, Defendant was engaged in trade or commerce and made false, misleading, or deceptive statements as part of its business of soliciting its services to customers. Such conduct is prohibited or declared unlawful under W. Va. Code §46A-6-102.

57. More specifically, Defendant caused confusion among Plaintiffs and Class Members regarding the certification of its mammography services under the Mammography Quality Standards Act of 1992 (MQSA). Between October 28, 2023, and February 26, 2026, Defendant made representations to patients that its facilities were MQSA-certified while simultaneously failing to ensure its facilities met clinical imaging quality standards.

58. Defendant, through its website, printed materials, and other actions, used deception, fraud, false pretenses, misrepresentation, and/or concealed, suppressed, or omitted material facts regarding the true nature of its mammography services with the intent that Plaintiffs and Class Members rely upon such concealment, suppression, or omission in connection with the sale or advertisement of its diagnostic services.

59. Defendant failed to maintain clinical image quality standards and/or MQSA certification when it provided Plaintiffs' and Class Members' mammograms. However, Defendant did not accurately represent this information or failed to inform Plaintiffs and Class Members of these material facts. Plaintiffs and Class Members justifiably relied on Defendant's misrepresentations.

60. If Plaintiffs and Class Members had known that Defendant would not maintain its mammogram technology and facilities, they would not have allowed Defendant to perform such vital diagnostic services. However, Plaintiffs and Class Members were not aware of the material facts and lost money because of Defendant's conduct. Plaintiffs and Class Members paid more for

mammography services that were deficient, inaccurate, and unreliable and will incur additional costs to have additional mammograms performed at other MQSA-certified facilities.

61.    As a direct and proximate result of Defendant's misrepresentations or omissions, Plaintiff and the Class have suffered and will continue to suffer damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Class alleged herein, respectfully request that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

B.    For an order declaring the Defendant's conduct violates the statutes and causes of action referenced herein;

C.    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and,

I.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: May 20, 2026.                                    Respectfully submitted,

**GOLDBERG PERSKY & WHITE, P.C.**

By: */s/ Leif J. Ocheltree*
Bruce E. Mattock, Esquire
WV ID No. 6996
Leif J. Ocheltree, Esquire
WV ID No. 10401
11 Stanwix Street, Suite 1800
Pittsburgh, PA 15222, and
281 Three Springs Drive, Suite 285
Weirton, WV 26062
Telephone: (412) 471-3980
Facsimile: (412) 471-8308
Telephone: (304) 723-0213

Email: bmattock@gpwlaw.com
locheltree@gpwlaw.com

AND-

**POULIN | WILLEY | ANASTOPOULO**

Paul J. Doolittle, Esquire[*]
Ryan D. Wilson, Esquire*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

Email: paul.doolittle@poulinwilley.com
ryan.wilson@poulinwilley.com
cmad@poulinwilley.com

*Counsel for Plaintiffs and Proposed Class*

*\*Statement of Visiting Attorney forthcoming*